IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LINDA PLEMONS BUECHLER,

      Plaintiff,

v.                       CIVIL ACTION NO. 2:07—00708

OLD DOMINION FREIGHT LINES, INC.,
et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff Linda Buechler's motion to remand. (Doc. No. 5.)  For the reasons set forth below, the court grants the motion and remands this matter to the Circuit Court of Kanawha County, West Virginia.

## I.  Factual and Procedural Background

This action arises from a suit filed in the Circuit Court of Kanawha County on September 14, 2007, by plaintiff against her former employer and supervisors.  (Doc. No. 1 Ex. A.)  Buechler, who is a West Virginia resident, alleges that she was sexually harassed by defendant Lemuel Clayton, her former supervisor and a vice president at defendant Old Dominion Freight Lines, Inc. ("Old Dominion"), where plaintiff was employed as a sales executive beginning around July 11, 2006.  (Id. at 1-3.)  She asserts that, beginning shortly after her employment commenced, Clayton subjected her to numerous sexually-charged e-mails and phone calls, and that the frequency of his trips to West Virginia

from his home state of North Carolina greatly increased after their introduction.  (Id. at 3-5.)  Plaintiff alleges that Clayton made numerous physical advances toward her, and that, in October 2006, he gave her a birthday card that implied his desire to have intercourse with her.  (Id. at 5-6.)  She also alleges that, in December 2006, Clayton warned her that her job would be in jeopardy if she did not comply with his advances.  (Id. at 7.)

Buechler states that she discussed Clayton's behavior with her then-direct supervisor, nonparty John Stratton, on many occasions.  (Id. at 6.)  In early spring of 2007, when Clayton's conduct had allegedly become intolerable, Buechler refused to meet with him while on a business trip to North Carolina.  (Id. at 7.)  She asserts that, upon her return to West Virginia, her superiors, including her new direct supervisor, Defendant Gary Caldwell,[1] began treating her differently:

> Prior to refusing to see or speak to Defendant Clayton, Plaintiff had been consistently told what a great job she was doing and that she was an asset to the company. However, after refusing to see or speak with Defendant Clayton, Plaintiff's new direct supervisor, Defendant Gary [Caldwell], while acting at the direction of Defendant Clayton decreased Plaintiff's sales territory; gave Plaintiff an unfavorable evaluation; and told the Plaintiff to perform tasks and then verbally reprimanded her for performing those tasks.

---

[1]  In the Notice of Removal, defendants note that "Caldwell," rather than "Calwell," is the correct spelling of this defendant's name.  (Doc. No. 1 at 1 n.1.)

-2-

(Id. at 7-8.)  As a result of "Defendant Clayton's sexual misconduct coupled with Defendants' discriminatory and retaliatory conduct," Buechler ultimately resigned.  (Id. at 8.)

Plaintiff asserts claims against Old Dominion and Clayton for quid pro quo sexual harassment (Count One) and for hostile work environment sexual harassment (Count Two), both in violation of the West Virginia Human Rights Act ("the Act"), W. Va. Code § 5-11-1, et seq.  (Id. at 8-10.)  Count Three asserts a sexual harassment claim against Old Dominion and Clayton under a public policy theory, and Count Four alleges civil battery on the part of Old Dominion and Clayton.  (Id. at 10-11.)  In Count Five, Buechler asserts a hostile work environment claim under the Act against Old Dominion, Clayton, and Caldwell based on their "unwelcome conduct of mistreatment and abuse."[2]  (Id. at 11-12.) These defendants' "discriminatory and retaliatory conduct" forms the basis of plaintiff's constructive retaliatory discharge claim in Count Six.  (Id. at 12-13.)  Count Seven alleges a cause of action against the three defendants for failure to pay plaintiff all wages due and owed, in violation of West Virginia Code Section 21-5-4(b).  (Id. at 13.)  Count Eight asserts that the

---

[2]  Defendants' brief misconstrues Count Five of the complaint as asserting a cause of action against Caldwell for hostile work environment *sexual harassment*.  (Doc. No. 14 at 4.) As plaintiff notes in her reply brief, the hostile work environment claim asserted in Count Five relates to the retaliatory conduct in which defendants allegedly engaged.

three defendants are liable for intentional or negligent infliction of emotional distress, and Count Nine asserts a right to punitive damages.  (Id. at 13-15.)

On November 6, 2007, defendants removed the action to this court pursuant to the court's diversity jurisdiction under Title 28 United States Code Section 1332.  (Doc. No. 1.)  In support of removal, defendants argue that plaintiff committed fraudulent joinder in suing Caldwell, the only non-diverse defendant.  (Id. at 2.)  Plaintiff contends that her claims against Caldwell are valid, and has moved to remand this action and for an award of costs and attorney fees incurred as a result of defendants' removal.  (Doc. No. 5.)  The motion is ripe for adjudication.

## II.  **Standard of Review**

Federal district courts may exercise diversity jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states.  See 28 U.S.C. § 1332(a)(1).  Title 28 United States Code Section 1441, known as the "removal statute," provides that a case filed in state court may be removed to federal court when it is shown by the defendant that the federal court has original jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Because removal raises federalism concerns, the court must carefully scrutinize the facts to ensure that removal is appropriate.  Mulcahey, 29 F.3d at 151 (citing

-4-

<u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100 (1941)).  The removing defendant bears the burden of establishing that removal is appropriate.  <u>Landmark Corp. v. Apogee Coal Co.</u>, 945 F. Supp. 932, 935 (S.D. W. Va. 1996) (Copenhaver, J.).   "If federal jurisdiction is doubtful, a remand is necessary." <u>Mulcahey</u>, 29 F.3d at 151.

Fraudulent joinder is an exception to the complete diversity requirement of Section 1332.  The fraudulent joinder doctrine allows a district court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction.  <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999).

A defendant is fraudulently joined if the plaintiff commits outright fraud in his pleadings or if there is no possibility of stating a claim against the resident defendant.  <u>Id.</u> at 464.  The burden to show fraudulent joinder is particularly heavy. Defendants must show that plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in plaintiff's favor.  <u>Id.</u>  The standard to be applied by the court is even more favorable to the plaintiff than the standard for granting motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  <u>Id.</u> at 464, 466 (stating that a "glimmer of hope" for relief against the non-diverse defendant is

sufficient to defeat removal jurisdiction).  In making this
determination, the court is not limited to the allegations of the
pleadings, but may consider the entire record and determine the
basis of the joinder "by any means available."  <u>Id.</u>

### III.  <u>Analysis</u>

Under the standard set forth above, plaintiff's motion to
remand must be granted if it appears there is any possibility for
success as to any one of her claims against defendant Caldwell.
Because the court finds that plaintiff's allegations are
sufficient to sustain a claim under the provisions of the Act
prohibiting retaliatory conduct, the court need not address the
viability of plaintiff's other claims against Caldwell.[3]

Section 5-11-9(7) of the Act provides in pertinent part as
follows:

It shall be an unlawful discriminatory practice . . .

(7) For any person [or] employer . . . to:

   (A) Engage in any form of threats or reprisal, or to
   engage in, or hire, or conspire with others to commit
   acts or activities of any nature, the purpose of which
   is to harass, degrade, embarrass or cause physical
   harm or economic loss or to aid, abet, incite, compel
   or coerce any person to engage in any of the unlawful
   discriminatory practices defined in this section;

---

[3]  The court notes that many of the cases defendants cite do
not arise under the West Virginia Human Rights Act.  (<u>See</u> Doc.
No. 14 at 4-9 (citing numerous federal employment law cases).)
Because Count Five (hostile work environment) and Count Six
(constructive retaliatory discharge) are both brought pursuant to
the Act, these cases have not been included in the court's
analysis.

-6-

(B) Willfully obstruct or prevent any person from complying with the provisions of this article, or to resist, prevent, impede or interfere with the commission or any of its members or representatives in the performance of a duty under this article; or

(C) Engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article . . . .

W. Va. Code § 5-11-9(7).[4]

Reprisal claims under this section exist independently of claims for sexual harassment. See Akers v. Cabell Huntington Hosp., Inc., 599 S.E.2d 769, 780 (W. Va. 2004)(where a plaintiff cannot prove that she was the subject of sexual harassment, she may nonetheless prove that her employer took improper employment-related action against her based solely on the reporting of the alleged sexual harassment). In order to state a prima facie case under this section, a plaintiff must allege (1) that she engaged in activity protected by the act; (2) that her employer was aware of the protected activity; (3) that she was subsequently discharged or otherwise penalized; and (4) that this discharge or other penalty followed her protected activity within such a period of time that the court can infer retaliatory motivation. Id. at 779 n.17 (quoting Frank's Shoe Store v. W. Va. Human

---

[4] "Person" is defined by the Act as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." W. Va. Code § 5-11-3(a).

Rights Comm'n, 365 S.E.2d 251 (1986)).  It is well established
that the Act prohibits retaliatory action not only on the part of
employers, but also on the part of employees and supervisors.
Holstein v. Norandex, Inc., 461 S.E.2d 473, 477 (W. Va. 1995).

    Buechler's complaint clearly satisfies the third element
above; she alleges that Caldwell, acting at the direction of
Clayton, decreased her sales territory, gave her an aberrantly
unfavorable evaluation, and reprimanded her for performing tasks
she had been directed to perform.  (Doc. No. 1 Ex. A ¶ 46.)
Because plaintiff alleges that these actions were taken
immediately after she had refused Clayton's advances, the
temporal proximity requirement of the fourth element is likewise
satisfied.  (See id. ¶¶ 44-46.)

    Turning to the first two elements, Defendants emphasize
that, although plaintiff claims to have complained of Clayton's
conduct to Mr. Stratton, she "makes no allegation that Mr.
[Caldwell] was ever made aware of Plaintiff's issues with Mr.
Clayton." (Doc. No. 14 at 6.)  While Buechler's allegation that
she complained to Stratton is not insignificant, it is
unnecessary for plaintiff to allege having made the same
complaint to defendant Caldwell.  Her rejection of Clayton's
advances was, in and of itself, protected conduct under the Act,
which prohibits not only retaliatory conduct, but also sexual
harassment, itself.  Moreover, the allegation that Caldwell

-8-

thereafter immediately retaliated against her at the direction of Clayton gives rise to the inference that Caldwell was at least partially aware of what had transpired.  Under the particularly liberal pleading standard of the fraudulent joinder analysis, it is an inference the court is compelled to draw.

### IV.  Conclusion

Because defendants have not carried the onerous burden of demonstrating fraudulent joinder, the court concludes that it lacks jurisdiction over this matter.  Accordingly, plaintiff's motion to remand (Doc. No. 5) is hereby **GRANTED** to the extent it seeks remand.[5]  Because the court concludes that the propriety of removal of this action was subject to a fair dispute, see Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 939-40 (S.D. W. Va. 1996)(Copenhaver, J.), the motion is **DENIED** to the extent it seeks attorney fees and costs.  The court **REMANDS** this action to the Circuit Court of Kanawha County, and **DIRECTS** the Clerk to remove this matter from the court's active docket.

The Clerk is further directed to send a copy of this Memorandum Opinion and Order to all counsel of record, and to

---

[5]  Because the court concludes that it lacks jurisdiction over this action, it does not reach the pending motions to dismiss.  (Doc. Nos. 2, 10.)

-9-

forward a certified copy of the same to the Clerk of the Circuit

Court of Kanawha County, West Virginia.

It is **SO ORDERED** this 17th day of January, 2008.

ENTER:

David A. Faber
United States District Judge